**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**TYREL ESCOBAR**,

                  Plaintiff,

      -against-

**DET. LUIS CORREA; DET. JAMIE ROSADO; U.S. MARSHAL KEVIN KAMROWSKI; U.S. MARSHAL ERIC KUSHI; SGT. DECLAN LUDINGTON; DET. RYAN SHEEHAN**; and **JOHN DOES 1-5**,

           Defendants.

Case No.: 22 cv 08434

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS BY DEFENDANTS CORREA, KAMROWSKI, KUSHI, AND ROSADO**

Rickner PLLC
14 Wall Street, Ste. 1603
New York, NY 10005

On the Brief:

      Stephanie Panousieris, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

THE FACTS ALLEGED ........................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

   I.    LEGAL STANDARD ................................................................................................. 3

   II.   ALL OF THE DEFENDANTS ARE LIABLE UNDER 42 U.S.C § 1983 ........................... 4

      A.   Liability Under § 1983 Is Not Limited to State Actors .................................................... 4

      B.   Plaintiff Plausibly Alleges that the Moving Defendants Acted Under Color of New
          York State Law, Precluding Dismissal of Plaintiff's § 1983 Claims ............................. 7

   III.  PLAINTIFF PROPERLY ALLEGED HIS ENTITLEMENT TO A *BIVENS* REMEDY
        PRIOR TO *LEWIS*, AND PRESERVES THE SAME FOR APPEAL ............................... 10

   IV.  THE COMPLAINT IS TIMELY ................................................................................. 11

      A.   This Case Was Filed Within the Applicable Three-Year Statute of Limitations .......... 12

      B.   COVID Tolling Applies Because Both § 1983 and *Bivens* Apply State Law Tort
          Statutes of Limitations, Which Were Tolled for 228 days in New York ...................... 12

      C.   Joinder of Kamrowski and Kushi Was Proper Under Rule 15 Because Plaintiff Moved
          to Amend Prior to the Expiration of the Statute of Limitations ................................... 14

      D.   Plaintiff's Claims Relate Back to First Amended Complaint ....................................... 15

          1.   Plaintiff's Claims Relate Bank Under CPLR § 1024 ................................................. 15

          2.   Alternatively, Plaintiff's Claims Relate Back Under CPLR § 203 ............................ 18

CONCLUSION ......................................................................................................................... 20

i

## TABLE OF AUTHORITIES

**CASES**

*Abreu v. City of New York*, 2018 WL 3315572 (S.D.N.Y. July 5, 2018) ................................16, 17

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ..........................................................................7

*Amaya v. Garden City Irrigation*, Inc., 645 F. Supp. 2d 116 (E.D.N.Y. 2009)............................20

*Arar v. Ashcroft*, 532 F.3d 157 (2d Cir. 2008)................................................................................7

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)..........................................................................5, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...........................................4

*Baez v. JetBlue Airways*, 745 F. Supp. 2d 214 (E.D.N.Y. 2010)...................................................8

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1995) ................................................15

*Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147 (2d Cir. 2006) .....................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................3

*Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971) ...............................passim

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980) ......................................................................13

*Bonilla v. City of New York*, No. 20 cv 1704, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020).......13

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)....................5

*Brock v. Bua*, 83 A.D.2d 61 (2d Dept. 1981).................................................................................18

*Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701 (S.D.N.Y. 2020)............................................4, 10

*Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99 (2d Dept. 2009).............................................15

*Buran v. Coupal*, 87 N.Y.2d 173 (1995).......................................................................................18

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961).............................................................5

*Ceara v. Deacon*, 68 F. Supp. 3d 402 (S.D.N.Y. 2014) ...............................................................16

*Challenger v. Bassolino*, No. 18 cv 15240, 2019 WL 625803 (D.N.J. Feb. 14, 2019) ................ 11

*Connell v. Hayden*, 83 A.D.2d 30 (N.Y. 1981) ........................................................... 19

*DaCosta v. City of New York*, 296 F. Supp. 3d 569 (E.D.N.Y. 2017) ................................... 15, 19

*Egbert v. Boule*, 596 U.S. 482 (2022) .................................................................. 10, 14

*Hogan v. Fischer*, 738 F.3d 509 (2013) ............................................................. 15, 16, 17

*Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011) ........................................................... 9

*Jones v. Assencao*, No. 20- cv 693, 2022 WL 4455229 (E.D.N.Y. June 28, 2022) ..................... 13

*Jordan v. City of New York*, 15 cv 6364, 2016 WL 1383534 (S.D.N.Y. 2016) ........................... 17

*Joseph v. Bute*, No. 16 cv 2004, 2019 WL 181302 (E.D.N.Y. Jan. 9, 2019) ......................... 16, 18

*Kletschka v. Driver*, 411 F.2d 436 (2d Cir.1969) ..................................................... 6, 7

*Lehal v. Cent. Falls Det. Facility Corp.*, No. 13 cv 3923, 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) ............................................................................................... 10

*Lewis v.* Bartosh¸No. 22-3060-PR, 2023 WL 8613873 (2d Cir. Dec. 13, 2023) ..................... 10, 14

*Lopez v. City of New York*, No. 15 cv 1650, 2017 WL 213243 (S.D.N.Y. Jan. 10, 2017) ............. 15

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ..................................................... 5, 9

*Lyles v. United States Marshalls Serv.*, 301 F. Supp. 3d 32 (D.D.C. 2018) ............................ 11

*Mabry v. N.Y.C. Dept. of Corr.*, No. 05 cv 8133, 2008 WL 619003 (S.D.N.Y. Mar. 7, 2008) ...... 17

*Martin v. Bryce*, No. 17 cv 00060, 2018 WL 1413465 (D. Mont. Jan. 10, 2018), *R&R adopted*, 2018 WL 1411210 (Mar. 21, 2018). .................................................................... 11

*Maurro v. Lederman*, 795 N.Y.S.2d 867 (Sup. Ct. Richmond Co. 2005) ............................ 18

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) ........................ 3

*Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir.2004) ..................................................................... 5

*Paul v. Capra*, No. 20 cv 5154, 2022 WL 992845 (S.D.N.Y. Mar. 31, 2022) ............................. 13

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) ......................................................... 13

*Prudential Ins. Co. of Am. v. Stone*, 270 N.Y. 154 (1936) ...................................................... 19

*Rivera v. City of New York*, No. 120 cv 9968, 2022 WL 1523165 (S.D.N.Y. May 13, 2022) ....... 13

*Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009) ................................................... 11

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) ................................................... 12, 13

*Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ................. 12

*Torres–Cuesta v. Berberich*, No. 08 cv 1382, 2011 WL 3298448 (E.D.N.Y. Aug. 1, 2011) ........ 11

*United States v. Classic*, 313 U.S. 299 (1941) .......................................................................... 5

*United States v. Morrison*, 529 U.S. 598 (2000) ....................................................................... 9

*Walker v. Agro*, 2000 WL 744536 (E.D.N.Y. May 19, 2000) .................................................... 20

*West v. Atkins*, 487 U.S. 42 (1988) ..................................................................................... 4, 5

*White v. Gutwein*, No. 20 cv 4532, 2023 WL 5803708 (S.D.N.Y. Sept. 6, 2023) ....................... 13

*Wilson v. City of New York, No*. 15 cv 07368, 2017 WL 9538860 (S.D.N.Y. Apr. 4, 2017), *R & R adopted*, No. 15 cv 7368, 2017 WL 2693599 (S.D.N.Y. June 19, 2017) .................................. 16

*Yaniv v. Taub*, 256 A.D.2d 273 (1st Dep't 1998) .................................................................... 20

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................passim

**RULES**

CPLR § 203 ..................................................................................................................... 18, 19, 20

CPLR § 1024 ..................................................................................................................... 15, 17, 18

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 3

Fed. R. Civ. P. 15(c) ................................................................................................................. 14, 15

Fed. R. Civ. P. 6(a)(1)(C) .......................................................................................................... 12

**OTHER AUTHORITIES**

Executive Order 202.8 ................................................................................................................ 13

Plaintiff Tyrel Escobar ("Plaintiff") hereby opposes Defendants Correa, Rosado, Kamrowski, and Kushi's respective motions to dismiss the Third Amended Complaint as follows:

## PRELIMINARY STATEMENT

Plaintiff was the victim of a brutal beating at the hands of the Defendants, in violation of his rights under the Fourth Amendment to the United States Constitution. The officers who employed this force were a combination of New York City Police Department ("NYPD") officers and United States Marshals working together in a joint task force to effectuate the arrest of Plaintiff pursuant to a state law warrant. Defendants Correa, Rosado, Kamrowski, and Kushi have now moved to dismiss the complaint in its entirely, arguing that a *Bivens* remedy does not exist, and that the complaint was untimely and does not relate back to the original pleading. But Defendants' arguments do not address the availability of a remedy under 42 U.S.C. § 1983; instead, they presume that it cannot apply to federal actors as a matter of law. But the Second Circuit's precedent counsels otherwise. Where, as here, *any* person acts under the color of state law and authority, he may be subject to liability under § 1983 when he infringes the constitutional rights of an individual.

Moreover, the complaint was timely filed, even without the benefit of New York's COVID-19 tolling, which further extends his limitations period. Finally, Plaintiff can demonstrate that the claims against those parties added after the limitations period expired nevertheless relate back to the timely filing, precluding dismissal on the basis of untimeliness.

## THE FACTS ALLEGED

On the morning of approximately October 2, 2019, after discovering that his bail was revoked, Plaintiff absconded from court and made his way to a family member's house on Featherbed Lane in the Bronx. TAC¶25.[1] Later that day, Defendants came to the home where

---

[1] The operative Third Amended Complaint (Doc. 39) is referenced as "TAC¶_." Defendant Correa's Memorandum of Law in Support of his Motion to Dismiss is referenced as "Doc. 64 at ___," citing the ECF

Plaintiff was located and employed brutal, retaliatory, and unnecessary excessive force against him, hitting, kicking, tasing, and punching him before dragging him down the stairs of the building. TAC¶26. At no point did Plaintiff resist the officers. Nonetheless, the officers were angry with Plaintiff and had no intention of arresting him peacefully after he absconded from court. TAC¶27.

During the assault, Defendants also verbally harassed and taunted Plaintiff, parts of which are captured on cell phone footage. TAC¶28. Defendants were heard encouraging one another to hit and tase Plaintiff, as well as boasting and laughing about how many blows or tasers they were able to deploy during the attack. TAC¶29. When Plaintiff was finally escorted from the apartment after the assault, he had visible injuries to his face, including a busted lip and obvious redness and bruising to the eye and cheek. TAC¶30. Despite having already assaulted Plaintiff unnecessarily, the Individual Defendants dragged plaintiff down multiple flights of stairs while he was cuffed with his hands behind his back. TAC¶31.When family and neighbors saw Plaintiff at the bottom of the stairs, he could barely stand, he appeared dizzy and disoriented, and he was bleeding out of at least one of his ears. *Id.*

Plaintiff was transported to a Bronx Precinct, and then to Queens Central Booking, where one or more of the Defendants placed a bag over Plaintiff's head—while he remained cuffed with his hands behind his back—and left him in a cell for several hours, denying him access to the phones. TAC¶32. These officers, including, but not limited to Det. Rosado, used Plaintiff's vulnerable state to again attack him, assaulting and battering Plaintiff a second time while he was defenseless and restrained. TAC¶33. At no time was Plaintiff afforded any medical treatment. Instead, he was badly beaten at least twice by the Individual Defendants, sent to court, and

---

page number. The Memorandum of Law in Support of Defendants' Kamrowski, Rosado, and Kushi's Motion to Dismiss is referenced herein as "Doc. 62 at _____," also citing to the ECF page number.

transported to Rikers Island prior to receiving any medical treatment whatsoever. TAC¶34.

Plaintiff commenced this action against ten John Does officers, alleging a single Fourth Amendment excessive force claim under 42 U.S.C. § 1983, on October 3, 2022. The initial pleading included still images pulled from bystander cell-phone footage. *See* Doc. 1. After his efforts to independently identify the Defendants were unsuccessful, Plaintiff filed a motion for early discovery from the City of New York ("City") to identify the officers, whom Plaintiff presumed were NYPD officers. *See* Doc. 6. On May 3, 2023, the City identified Defendants Correa and Rosado and asserted that the remaining officers were United States Marshals. *See* Doc. 18. Immediately thereafter, Plaintiff sought and was granted leave to serve a subpoena to the Marshals to identify the remaining Defendants, *see* Doc. 21, all of which occurred prior to the expiration of the statute of limitations.

The Marshals Service responded and identified Kamrowski and Kushi on June 5, 2023, just three weeks after the limitations period ended. Plaintiff immediately sought leave to amend the add these officers, filing his Second Amended Complaint ("SAC") on June 6, 2023. On June 22, 2023, the City clarified that additional NYPD officers, whose photos were in the initial complaint, were identified as Sheehan and Declan. *See* Doc. 36. Plaintiff against amended, filing the operative Third Amended Complaint ("TAC") on Jue 23, 2023. *See* Doc. 36.

## ARGUMENT

### I.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) ("a complaint must provide 'enough facts to state a claim to relief that is

plausible on its face.").

In deciding a motion to dismiss, the "court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 705 (S.D.N.Y. 2020) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)).

## II.   ALL OF THE DEFENDANTS ARE LIABLE UNDER 42 U.S.C § 1983

### A.  Liability Under § 1983 Is Not Limited to State Actors

Defendants have presumed that the only remedy Plaintiff can assert against them is one brought pursuant to *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971), based on their identity as United States Marshals or NYPD officers deputized under the Marshals' federal task force. This is incorrect as a matter of law. Section § 1983 states, in relevant part:

> ***Every person*** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

42 U.S.C. § 1983 (emphasis added). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A § 1983 claim is frequently, but not exclusively, brought against state agents, who derive their authority from the state, and are therefore subject to § 1983 when they infringe on the federal constitutional rights of an individual.

But the remedy has never been limited to state actors, and the "color of law" analysis does not turn on the employment status of the actor alleged to have committed the constitutional violation. Instead, "[t]he traditional definition of acting under color of state law requires that the

4

defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. at 48) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941))."; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.").

"The determination as to whether a non-state party acts under color of state law requires an intensely fact-specific judgment unaided by rigid criteria as to whether particular conduct may be fairly attributed to the state." *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) "[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the [] involvement of the State" be determined). The necessary component in the state action analysis is that "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937; *see also Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 903 (6th Cir.2004) ("It is the nature of the act performed, not the clothing of the actor or even the status of being on-duty . . . which determines whether the officer has acted under color of law").

This Circuit has long held federal officials liable under § 1983 where, as here, their power and authority was derived from state, rather than federal, authority. Even before *Bivens* was decided, this Circuit held that federal defendants could be held liable under § 1983 where they were joint participants in the challenged action, where the state had placed itself into a position of interdependence with the federal defendant *See, e.g., Kletschka v. Driver*, 411 F.2d 436, 449 (2d Cir.1969). In *Kletscshka*, the Plaintiff, doctor working at a VA Hospital in Syracuse, New York, alleged that both federal and state defendants acted in concert and conspired to deprive him of his federal constitutional and statutory rights when they denied him a hearing prior to transferring him to another VA hospital across the country. *Id*. at 440–441. In allowing the § 1983 action to proceed against both the state and federal defendants at summary judgment, the Circuit held that it could see "no reason why a joint conspiracy between federal and state officials should not carry the same consequences under § 1983 as does joint action by state officials and private persons." *Id*.

Notably, *Kletschka* has never been overruled, and remains binding authority on the issue of whether a federal defendant can be held liable under § 1983 when acting under color of state law. A review of the *Kletschka's* progeny after *Bivens* was decided two years later reveals that the holding of *Kletschka* was not cited expansively for many years. This was not because its holding was overturned, but because litigants had a new avenue of relief against federal actors acting under color of federal law, covering most circumstances in which federal defendants were sued.

But *Kletschka* was reaffirmed by the Circuit, in no uncertain terms, that "[a] federal actor may be subject to section 1983 liability where there is evidence that the federal actor was engaged in a 'conspiracy' with state defendants." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 (2d Cir. 2006). And in 2008, the Circuit again reaffirmed *Kletschka*, clarifying that, "when the 'non-State' actor is a federal official," he may be held liable under § 1983 if "state law played a

'significant role' [and] the complained-of actions can be attributed to 'the control or influence of the State defendants.'" *Arar v. Ashcroft*, 532 F.3d 157, 176 (2d Cir. 2008) (quoting *Kletschka*, 411 F.2d at 448–49)). The court further reiterated a central holding of *Kletschka*: that the "control or influence test reflects the evident purpose of § 1983 [,] [which is] to provide a remedy when federal rights have been violated through the use or misuse of a power derived from a State." *Id*. (cleaned up) (quotations omitted). On rehearing, the *en banc* panel affirmed that a "federal officer who conspires with a state officer may act under color of state law." *Arar*, 585 F.3d at 568 .[2]

Because *Kletschka* has not been overturned and remains the law of this Circuit, Plaintiff may hold all of the Defendants liable under § 1983, because their authority was derived from the state. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970).

## B. Plaintiff Plausibly Alleges that the Moving Defendants Acted Under Color of New York State Law, Precluding Dismissal of Plaintiff's § 1983 Claims

Not only were the Defendants acting in concert to deprive Plaintiff of his constitutional right to be free from excessive force, they also meet the definition for acting under color of state law, opening them to liability under § 1983. Using these principles articulated by the Supreme Court and the Second Circuit, it is clear that the Defendants in this action were operating under the authority of the State of New York, not under any federal authority. This is the critical difference between *Bivens*, which holds federal agents liable for actions taken under *federal* law, and § 1983,

---

[2] So too have sister circuits throughout the country recognized that federal actors can be sued under § 1983 when their conduct was made possible only through state authority. *See, e.g., Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir.1998) (federal officials are subject to Section 1983 liability where they have acted "in conspiracy with state officials"); *Strickland v. Shalala*, 123 F.3d 863, 867 (6th Cir.1997) (a federal official has acted under color of state law when there is evidence that federal and state officials engaged in a conspiracy or "symbiotic" venture to violate a person's constitutional rights); *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) ("We therefore reject the federal defendants' argument that they cannot be considered "persons" under § 1983."); *Rowe v. Tennessee*, 609 F.2d 259, 263–64 (6th Cir.1979) (federal employees or "agents" of the federal government to discharge plaintiff was within their statutory administrative authority at the state level and, thus, was done under color of state law).

which holds "any person" liable for constitutional violations taken under color of *state* law.

Plaintiff was wanted on a purely *state* law warrant for absconding from *state* court while facing *state* charges. His arrest had nothing to do with federal law; no federal warrant was issued; and no federal legal authority gave the Marshals and the task force members the ability to enter a private home and arrest a private individual. If it is possible that law enforcement agents acting for and on behalf of the state could eschew liability under § 1983 based on their status as a federal officer, the NYPD could easily escape liability every time its officers exercise their policing authority, so long as they cloak themselves in the protection of a federal task force. Conversely, the Marshals would enjoy complete immunity from their unlawful actions in every case where they are working by and for the state to enforce state law. Neither of these conclusions are tenable, and both are inconsistent with the history and plain language of § 1983. Put simply, wearing a federal badge or having the title of a federal task force member is simply not the test for acting under color of law.

The Second Circuit has put forth several principles to determine whether a private party has acted under state law, considerations which are equally compelling and relevant to the analysis here: A party acts under color of state law if "(1) the state compelled the [] party's conduct, (2) the [] party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state*." Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (citing *Sybalski v. Indep. Group Home Living Program, Inc*., 546 F.3d 255, 257 (2d Cir.2008)). While only one of these three criteria need to be met to find state action, the Defendants in this case meet all three.

*First*, the State of New York compelled the Defendants' conduct. The arrest warrant permitting the officers to enter the building where Plaintiff was located, order him under arrest,

and, if necessary, use reasonable force to do so, all derived from the authority of a New York state criminal court judge who signed the warrant for Plaintiff's arrest. There is no allegation in the complaint that Plaintiff faced federal charges, a federal warrant, or was otherwise subject to federal law in relationship to this arrest. *See, e.g., Lugar*, 457 U.S. at 937 (for action to the attributable to the state, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.").

*Second*, each of the Defendants acted in concert with one another to deprive Plaintiff of his rights, both by acting jointly with the NYPD, and by deriving their authority from a state warrant. In fact, Defendant Correa even concedes that the officers were "were operating under the authority of the judiciary" when they entered the home and arrested Plaintiff. Doc. 64 at 11. He fails to point out that "the judiciary" here was a state criminal court, who issued a state criminal warrant.

*Third*, the Defendants were fulfilling a role that is the quintessential state government function—policing and enforcing the laws of the State of New York, which Plaintiff was accused of violating. *See generally United States v. Morrison*, 529 U.S. 598, 618 (2000) ("we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

Finally, in their respective prayers for relief, Defendants have moved to dismiss the complaint in its entirety, but have not briefed or addressed the availability of the § 1983 remedy against the officers. *See generally Jackler v. Byrne*, 658 F.3d 225, 233 (2d Cir. 2011) (arguments waived where briefing does not address cause of action). Det. Correa relegated this argument to a footnote, presuming that no remedy exists based on the fact that he was deputized as a federal task-force agent at the time of the use of force. *See* Doc. 64 at 6, n.1. Defendants Kamrowski, Kushi,

and Rosado failed to mention their liability under § 1983. *See generally* Doc. 62. Plaintiff is therefore entitled to proceed on his § 1983 claim against all Defendants at this stage of the litigation, because, at a minimum, the allegations in the complaint plausibly allege that each of the Defendants acted under color of state law.

III.   **PLAINTIFF PROPERLY ALLEGED HIS ENTITLEMENT TO A *BIVENS* REMEDY PRIOR TO *LEWIS*, AND PRESERVES THE SAME FOR APPEAL**

Plaintiff concedes that the Second Circuit's recent decision in *Lewis v. Bartosh* likely precludes a remedy under *Bivens* in this case. No. 22-3060-PR, 2023 WL 8613873 (2d Cir. Dec. 13, 2023). In *Lewis*, the Circuit declined to extend *Bivens* to a cause of action to a claim of excessive force against the U.S. Marshals, namely because the Court considered the Marshals "a new category of defendant" under *Egbert v. Boule*, 596 U.S. 482, 492 (2022). However, *Lewis* was decided less than two months ago on December 13, 2023, and did not control when the Third Amended Complaint was filed on June 23, 2023. Since first learning that U.S. Marshals may have been involved in this incident, Plaintiff has consistently plead both a § 1983 and *Bivens* cause of action for every defendant, and both remedies remain part of the operative complaint.

While a *Bivens* remedy may now be foreclosed by *Lewis*, it was not at the time of filing, and Plaintiff reserves his right to challenge the Circuit's holding as wrongly decided based on precedent permitting excessive force cases under *Bivens*, as well as allowing actions against federal law enforcement, including U.S. Marshals. *See e.g. Bueno Diaz*, 442 F. Supp. 3d at 709 ("Unlike the highly unusual considerations present in *Abbasi*, chief among them national security and the detention of terrorism suspects, the facts here present a garden variety excessive force case.") (citations omitted); *Lehal v. Cent. Falls Det. Facility Corp*., No. 13 cv 3923, 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (permitting excessive force claim to proceed to trial because "it has long been the practice of courts in this Circuit to permit *Bivens* claims arising from

the use of excessive force in an arrest" and "the distinctions that the Marshal Defendants highlight between . . . *Bivens* and the facts presented here—i.e., the location of the arrest, and the existence of a warrant—should not be characterized as potential special factors that previous Bivens cases did not consider.") (cleaned up); *Torres–Cuesta v. Berberich*, No. 08 cv 1382, 2011 WL 3298448, at *12 (E.D.N.Y. Aug. 1, 2011) ("Under *Bivens*, a plaintiff may recover money damages against an officer acting under color of federal law for using excessive force in violation of the Fourth Amendment in effecting his arrest."); *Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009) (*Bivens* excessive force claim sufficient to survive summary judgment).[3]

As discussed at length above, the Defendants here were acting under color of state law, not federal law, and are therefore subject to liability under § 1983. But if this Court ultimately finds that Defendants were not acting under color of state law and an appeal is taken, Plaintiff reserves his right to argue that *Bivens* should have been available to him in this action given the wealth of caselaw in this district, and around the country, demonstrating that the remedy is available.

## IV.    THE COMPLAINT IS TIMELY

Defendants Carrea, Rosado, Kamrowski, and Kushi have also moved to dismiss for lack of jurisdiction based on the timing of the filing of the original complaint in this matter, as well as the timing of the amendment naming them as defendants. But Correa and Rosado were joined to the action in the FAC, prior to expiration of the limitations period, and thus have no colorable jurisdictional argument. *See* Doc. 22. Defendant Kamrowski and Kushi were joined in the SAC,

---

[3] There is ample evidence that federal courts across the country have allowed such claims. *See, e.g., Challenger v. Bassolino*, No. 18 cv 15240, 2019 WL 625803, at *3 (D.N.J. Feb. 14, 2019) (Fourth Amendment claim against U.S. Marshal alleging excessive force in effecting arrest at plaintiff's proper under *Bivens*); *Lyles v. United States Marshalls Serv.*, 301 F. Supp. 3d 32 (D.D.C. 2018) (addressing, on the merits, *Bivens* claim challenging U.S Marshals' use of excessive force while evicting plaintiff from her apartment); *Martin v. Bryce*, No. 17 cv 00060, 2018 WL 1413465, at *4 (D. Mont. Jan. 10, 2018) (addressing, on the merits, *Bivens* claim alleging that Deputy U.S. Marshal used excessive during arrest made pursuant to an arrest warrant) *R&R adopted*, 2018 WL 1411210 (Mar. 21, 2018).

which was filed three weeks after the limitations period expired, immediately after Plaintiff learned their identities. *See* Doc. 27. The claims against all Kamrowski and Kushi, however, relate back to the initial, timely filing, and they have been properly joined as Defendants in this action.

### A. This Case Was Filed within the Applicable Three-Year Statute of Limitations

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Plaintiff's claims accrued on the date he received his injuries, October 2, 2019. Defendant Correa argues that the October 3, 2022 filing was one day late, because Plaintiff's claims accrued on October 2, 2019. *See* Doc. 64 at 14–15. But Plaintiff filed on October 3, 2022, because the three-year limitations date ended on a Sunday. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), if a statutory period expires on a weekend, a pleading filed on the next business day is considered timely. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ("Pursuant to Rule 6 of the Federal Rules of Civil Procedure, if the last day of the limitations period 'is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.'") (quoting Fed. R. Civ. P. 6(a)(1)(C)).

The original complaint was therefore timely filed, even exclusive of the application of COVID-19 tolling, which Plaintiff is entitled to utilize here.

### B. COVID Tolling Applies Because both § 1983 and *Bivens* Apply State Law Tort Statutes of Limitations, Which Were Tolled for 228 days in New York

Defendants argue that New York's COVID-19 tolling in calculating his limitations period. *See* Doc. 62 at 17–24; Doc 64 at 15, n.3. This argument is without merit.

"The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules.'" *Pearl v. City of Long Beach*, 296 F.3d 76, 80

(2d Cir. 2002) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980)). Moreover, "[t]here is no question that the state's 'procedural laws' governing tolling are 'tolling rules' that should be 'borrowed.'" *Bonilla v. City of New York*, No. 20cv 1704, 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020). "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). New York Executive Order 202.8, in turn, extended the three-year statute of limitation by 228 days. *Paul v. Capra*, No. 20 cv 5154, 2022 WL 992845, at *6 (S.D.N.Y. Mar. 31, 2022) (Executive Order 202.8 tolled § 1983 statute of limitations from March 20, 2020 through November 3, 2020).

While the Circuit has not yet ruled on this issue, district courts across New York have permitted hundreds of lawsuits to proceed under the presumption that the governor's COVID-19 tolling applies under the principles articulated above. *See, e.g., White v. Gutwein*, No. 20 cv 4532, 2023 WL 5803708, at *3–4 (S.D.N.Y. Sept. 6, 2023) (applying Executive Order 202.8 to § 1983 claims); *Bonilla*, 2020 WL 6637214, at *3 ("applying the executive order to Plaintiff's Section 1983 claims is not clearly erroneous or contrary to law"); *Jones v. Assencao*, No. 20- cv 693, 2022 WL 4455229, at *5 (E.D.N.Y. June 28, 2022) ("Courts have uniformly held that this Executive Order's tolling applies to federal section 1983 claims using the New York statute of limitations."); *Rivera v. City of New York*, No. 120 cv 9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022) (collecting cases). So too should this court apply the tolling period to Plaintiff's claims based on the Supreme Court's directive that "tolling rules" are borrowed from state law in § 1983 actions. *See Tomanio*, 446 U.S. 478 at 484–86.

Nor have Defendants demonstrated how the COVID tolling would, in any way, undermine the goals of § 1983 such that the tolling provision should not be applied; they have only linked

their concerns to the same considerations expressed in *Egbert* in the context of a *Bivens* claim, arguing that application of the toll would present a new *Bivens* context. *See* Doc. 62 at 19–20. Because Plaintiff concedes the unavailability of *Bivens* in light of the Second Circuit's recent holding in *Lewis*, the court need not decide if the toll applies to *Bivens* in the same manner it has been repeatedly applied to § 1983 claims.

### C. Joinder of Kamrowski and Kushi Was Proper Under Rule 15 Because Plaintiff Moved to Amend Prior to the Expiration of the Statute of Limitations

Defendants Kamrowski and Kushi further argue that they should be dismissed from suit because the Second Amended Complaint ("SAC") naming them for the first time was made outside the applicable limitations period, and the claims do not relate back under Fed. R. Civ. P. 15(c). While it is true that these two Defendants' names were identified three weeks after the limitations period had expired, Plaintiff moved to amend to replace the John Does for the first time prior to the expiration of the statute of limitations. *See* Doc. 22. With COVID-19 tolling, Plaintiff's statute of limitations was extended from October 2, 2022 to May 17, 2023. The first Amended Complaint ("FAC"), which added Defendants Correa and Rosado, was filed on May 4, 2023, within the limitations period, and added information indicating that the outstanding Doe Defendants were likely U.S. Marshals. *See* Doc. 22.

Prior to filing the FAC, Plaintiff sought leave from the Court to file the amendment, and to serve a subpoena on the U.S. Marshals, as he had learned for the first time from interested party City of New York that the Marshals may have been involved in the arrest. *See* Doc. 20. The Marshals subsequently responded to the *Touhy* request on June 5, 2023, *see* Doc. 27-1, and Plaintiff immediately amended to add the Marshals to his Second Amended Complaint ("SAC"), which included Kamrowski and Kushi. *See* Doc. 29.

14

**D.  Plaintiff's Claims Relate Back to First Amended Complaint**

Even if the timing of Plaintiff's motion for leave to file the FAC does not control for the analysis of timeliness for Kamrowski and Kushi, Plaintiff can establish entitlement to the relation-back doctrine to properly join both Marshals.

Amendment of the pleadings to substitute a 'John Doe' with a named party beyond the applicable statute of limitations is permitted when Rule 15(c) of the Federal Rules of Civil Procedure are met. *See Lopez v. City of New York*, No. 15 cv 1650, 2017 WL 213243, at *3 (S.D.N.Y. Jan. 10, 2017) (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468 (2d Cir. 1995) (citations, quotations, and alterations omitted), *modified*, 74 F.3d 1366 (2d Cir. 1996)). Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Because the statute of limitations for § 1983 claims derive from state law, Plaintiff may utilize the relation-back doctrine codified in New York law to permit amendment of his claims. *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017).

**1.  Plaintiff's Claims Relate Bank Under CPLR § 1024**

In New York, a plaintiff may amend their complaint to relate claims against a previously unknown party back to the complaint's filing for statute of limitations purposes under Section 1024 or 203 of the Civil Practice Law and Rules ("CPLR"). *See Lopez*, 2017 WL 213243, at *3. Under CPLR Section 1024, a claim against a previously unknown party will relate back to when the original complaint was filed where a party meets two conditions: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2013) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dept. 2009)).

To satisfy the first prong, a plaintiff must "'show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'" *Abreu v. City of New York*, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018) (quoting *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014)). Courts assess this due diligence requirement by "evaluating the various steps that the plaintiff could have taken and did in fact take to identify the actual name of the 'John Smith' defendants prior to the expiration of the statute of limitations period." *Wilson v. City of New York, No*. 15 cv 07368, 2017 WL 9538860, at *4 (S.D.N.Y. Apr. 4, 2017), *R & R adopted*, No. 15 cv 7368, 2017 WL 2693599 (S.D.N.Y. June 19, 2017). In other words, lack of due diligence will be found "'in the absence of *any* efforts at identification prior to the statute of limitations.'" *Joseph v. Bute*, No. 16 cv 2004, 2019 WL 181302, at *6 (E.D.N.Y. Jan. 9, 2019) (quoting *Abreu*, 2018 WL 3315572, at *6) (emphasis in original).

Actions constituting due diligence include, inter alia, "serving discovery demands on any known parties or seeking disclosures pursuant to a Freedom of Information Law request." Williams v. United States, 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010) (internal citations omitted); see Barrett v. City of Newburgh, 720 F. App'x 29, 33 (2d Cir. 2017) (citing "requests to the Attorney General's office" as a concrete step to ascertain an officer's identity); see also Hogan, 738 F.3d at 519 (pro se plaintiff acted diligently for § 1024 purposes where he "summit[ed] over ten discovery demands and multiple requests under New York's Freedom of Information Law");

As evidenced from the docket alone—which does not even take into account efforts made prior to the October 2022 filing—it is clear that Plaintiff acted with extreme diligence to identify the Defendants prior to the expiration of the May 17, 2023 limitations period. He sought early discovery from the Court after his independent efforts to find the officers' identity were unsuccessful. *See* Doc. 6 (letter seeking discovery dated January 9, 2023). He conferred with the

City of New York in an effort to identify the Defendants, whom he presumed were NYPD officers, given that they were arresting him on a state law charge, and he was not under any federal supervision at the time of this arrest. *See* Doc. 12 (order authorizing subpoena to the City of New York). Immediately upon learning that U.S. Marshals may be involved, he sought leave from the Court again to make a *Touhy* request to the Marshals Service, which was served in-person on the Marshals Service on May 5, 2023—prior to the statute of limitations. Plaintiff did not receive a response from the Marshals until June 5, 2023, and he immediately requested leave to amend Kamrowski and Kushi the next day. *See* Doc. 27 (letter motion to amend and file SAC). Thus, Kamrowski and Kushi were joined as Defendants just three weeks after the limitations period expired, promptly after the Marshals responded to the *Touhy* request.

These extensive efforts to identify the defendants in this action are more than sufficient to meet the first prong of the analysis under CPLR § 1024. *See, e.g., Mabry v. N.Y.C. Dept. of Corr.*, No. 05 cv 8133, 2008 WL 619003, at *6 (S.D.N.Y. Mar. 7, 2008) (permitting relation back where plaintiff "aggressively sought the identities of defendants" through letters and discovery requests).

The second prong of CPLR Section 1024, as described by this District, is "not particularly arduous." *Abreu*, 2018 WL 3315572, at *6. Alleging the correct date, time, and location of an incident may even be enough to apprise the proper defendants of their liability. *See, e.g., Hogan*, 738 F.3d at 519 (plaintiffs adequately described Doe defendants where complaint provided the date, time, and location of the incident, as well as a physical description of the unidentified defendants); *Jordan v. City of New York*, 15 cv 6364, 2016 WL 1383534, at *3 (S.D.N.Y. 2016) ("likely" adequate description where the complaint listed the date and location of the arrest); *Duncan v. City of New York*, No. 11 cv 3901, 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (adequate description where complaint listed date and location of the arrest and detailed the actions

of the later-identified officer); *Maurro v. Lederman*, 795 N.Y.S.2d 867, 868 (Sup. Ct. Richmond Co. 2005) (adequate description where complaint described defendant as doctor who treated plaintiff at a specific office on a given day).

Here, Plaintiff went a step further—he included photographs of the faces of the officers who brutalized him, eliminating any question as to their identity. That Plaintiff needed discovery to uncover the officers' names does not undermine the fact that their faces have always been part of the pleadings. Based on the foregoing, it cannot be said that Plaintiffs did not make "any efforts at identification" prior to the expiration of the statute of limitations. *See Joseph*, 2019 WL 181302, at *6. As such, Plaintiffs claims against Kamrowski and Kushi relate back to the date of the original Complaint under CPLR § 1024.

### 2. Alternatively, Plaintiff's Claims Relate Back Under CPLR § 203

The relation-back doctrine is also available under CPLR § 203. A claim relates back under CPLR § 203 if (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, but for a mistaken omission, the action would have been brought against him as well. *See Nemeth v. K-Tooling*, 40 N.Y.3d 405, 408 (2023) (citing *Buran v. Coupal*, 87 N.Y.2d 173, 178(1995); *Brock v. Bua*, 83 A.D.2d 61 (2d Dept. 1981).[4]

"The doctrine focuses on the notice and prejudice to the added party." *Nemeth*, 40 N.Y.3d at 408. Thus, where the party seeking to benefit from the doctrine establishes that the omission of a party "was not a deliberate, informed litigation strategy to gain tactical advantage," the doctrine

---

[4] *Buran* modified the *Brock* test and clarified that New York law requires merely a mistake—not excusable mistake—on the part of the litigant seeking the benefit of the relation back doctrine.

may apply. *Id*. Plaintiff can establish each of the *Buran* prongs and has not engaged in deliberate delay to gain a tactical advantage, and is therefore entitled to the benefit of relation back under CPLR § 203 as well.

*First*, there is no question that the SAC naming Kamrowski and Kushi and the original filing arise out of the same underlying occurrence and transaction. *See DaCosta*, 296 F. Supp. 3d at 586. The factual allegations have not changed between the original pleading and the operative complaint, except to the extent that Plaintiff added allegations concerning the presence of the Marshals in his FAC, an addition made prior to the expiration of the tolled limitations period. *See* Doc.  22 (adding a cause of action for *Bivens* and amending the "parties" section to account for the possibility that Defendants were NYPD officers or U.S. Marshals).

*Second*, the defendants are "united in interest" as required by CPLR § 203. To determine unity of interest, "it is not necessary for the parties to be joint contractors or have a joint interest; we look to whether the parties' interest 'in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other.'" *Nemeth*, 40 N.Y.3d at 415 (quoting *Prudential Ins. Co. of Am. v. Stone*, 270 N.Y. 154, 159 (N.Y. 1936)). Here, all of the Defendants are facing the same allegations of excessive force; each defendant's use of force with be analyzed under the same Fourth Amendment reasonableness standard; and all of the Defendants will have similar, if not identical, defenses available to them for their joint assault on Plaintiff. *See Connell v. Hayden*, 83 A.D.2d 30, 43 (N.Y. 1981) ("when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest.").

*Third*, given the detailed descriptions in the initial complaint, which included photographs of the Defendants who now seek to eschew liability, the officers knew or should have known that

they were proper parties in this action. Contrary to Kamrowski and Kushi's arguments, the New York Court of Appeals has explicitly held that "the relation back doctrine is not limited to cases where the amending party's omission results from doubts regarding the omitted party's identity or status," contrary to the assertions of Defendants. *Nemeth*, 40 NY.3d at 410. Instead, "courts considering this element typically deem dispositive the presence or absence of bad faith on the part of the party seeking the amendment." *Walker v. Agro*, 2000 WL 744536, *4 (E.D.N.Y. May 19, 2000) (citing *Yaniv v. Taub*, 256 A.D.2d 273 (1st Dep't 1998)); *Amaya v. Garden City Irrigation*, *Inc.*, 645 F. Supp. 2d 116, 124 (E.D.N.Y. 2009) ("the pertinent question is whether the plaintiff acted intentionally; acting in bad faith to obtain a tactical advantage is simply one form of intentional conduct.")

As with most equitable remedies, relation back is about notice and fairness. In this case, not only were Defendants pictured in the original complaint—which was filed well before the expiration of the statute of limitations, inclusive of COVID-19 tolling—the Marshals Service was on direct notice of the action prior to the limitations period expiring as well. *See* Doc. 23 (Affidavit of Service of subpoena and complaint on the United States Marshals, by hand-delivery, on May 5, 2023). And the record is clear that Plaintiff was more than diligent in seeking the officers' identities prior to the expiration of the statute of limitations. *See* Section IV(D)(1), *supra*. Because Plaintiff meets each of the *Buran* factors and has exhibited no bad-faith conduct to gain a tactical advantage, he is entitled to the benefit of relation-back under CPLR §203.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Defendants' motion to dismiss the complaint in its entirety be denied, and Plaintiff be permitted to proceed on his timely filed 42 U.S.C. § 1983 claims against all Defendants.

Dated:  New York, New York
        February 9, 2024

Rickner PLLC

By:

Stephanie Panousieris

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*

TO:

All parties via ECF

21