USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/4/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYREL ESCOBAR,

                      Plaintiff,

-against-

DET. LUIS CORREA, et al.,

                      Defendants.

22-CV-08434 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff brings this action against various law enforcement officers for their alleged use of excessive force during his arrest on a fugitive warrant in October 2019. Before the Court are two motions to dismiss the Third Amended Complaint as against defendants Deputy U.S. Marshal Kevin Kamrowski, Deputy U.S. Marshal Eric Kushi, Detective Jaime Rosado,[1] and Detective Luis Correa. Dkt. Nos. 61 and 63. For the reasons that follow, the motions to dismiss are GRANTED.

## BACKGROUND

Plaintiff Tyrel Escobar (the "Plaintiff") filed a complaint on October 3, 2022, against John Does 1-10. Dkt. No. 1. He subsequently amended the complaint three times and named various defendants, filing a Third Amended Complaint on June 23, 2023. Dkt. No. 39 ("Third Amended Complaint" or "TAC").

Plaintiff, through his Third Amended Complaint, alleges the use of excessive force in violation of 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of*

---

[1] Plaintiff's Third Amended Complaint refers to Det. Rosado as "Jamie Rosado." Det. Rosado has clarified through counsel that his first name is "Jaime" Rosado. Defs. Kamrowski, Kushi, and Rosado's Mem. Supp. Mot. Dismiss, Dkt. No. 62, at 1 n.1 ("Joint Mem.").

*Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). In the Third Amended Complaint, Plaintiff named the following individuals as defendants in their individual capacities: Detective Luis Correa, Detective Jaime Rosado, Deputy U.S. Marshal Kevin Kamrowski, Deputy U.S. Marshal Eric Kushi, Sergeant Declan Ludington, Detective Ryan Sheehan, and unnamed John Does 1-5 (U.S. Marshals and/or officers or agents of the New York Police Department ("NYPD")) (collectively, "Defendants"). TAC ¶¶ 6, 9, 12, 13, 14, 17, 20. Dets. Correa, Rosado, and Sheehan, and Sgt. Ludington were, "at all times relevant," NYPD officers employed by the City of New York who were "deputized by the United States Marshals Service Fugitive Task Force."[2] *Id.* ¶¶ 6, 9, 14, 17.

The facts, as alleged by Plaintiff and assumed to be true for purposes of the motions, are as follows:

On October 2, 2019, Plaintiff absconded from court[3] after discovering that his bail had been revoked and went to a family member's house in the Bronx. *Id.* ¶ 25.

Later the same day, five to six of the Defendants arrived at the house to arrest Plaintiff. *Id.* ¶ 26. Plaintiff alleges that he did not resist Defendants, but they nonetheless used "brutal, retaliatory excessive force" against Plaintiff. *Id.* ¶¶ 26–27. Defendants allegedly hit, kicked, tased, and punched Plaintiff; verbally harassed and taunted Plaintiff; encouraged one another to hit and tase Plaintiff; and boasted and laughed about "how many blows or tasers they were able

---

[2] Det. Rosado and Deputy U.S. Marshals Kamrowski and Kushi note that in spite of Plaintiff's allegations, "upon information and belief, defendants Ludington and Sheehan are NYPD officers who were not deputized by the U.S. Marshals Service Fugitive Task Force." Joint Mem. at 2 n.2. This issue does not bear on the disposition of this Opinion, although the assertion is consistent with Det. Sheehan and Sgt. Ludington's answer to the Third Amended Complaint. Dkt. No. 43.

[3] Although the Third Amended Complaint merely states that Plaintiff "absconded from court," TAC ¶ 25, it appears from the briefing on the motions to dismiss that the relevant court was the New York state court located in Queens County.

to deploy during the attack." *Id.* ¶¶ 26–29.  Defendants also allegedly dragged Plaintiff down multiple flights of stairs while Plaintiff's hands were cuffed behind his back.  *Id.* ¶ 31.  Some of this alleged conduct was purportedly caught on cell phone video footage, and when Plaintiff was escorted from the apartment, he had visible injuries, including a busted lip, obvious redness, and bruising to his eye and cheek.  *Id.* ¶¶ 29–30.  Additionally, after Defendants had dragged Plaintiff down the stairs, he could "barely stand, . . . appeared dizzy and disoriented, and . . . was bleeding out of at least one of his ears."  *Id.* ¶ 31.

Plaintiff was transported to a Bronx precinct and then to Queens Central Booking, where additional officers placed a bag over Plaintiff's head while Plaintiff remained cuffed; those officers, including Det. Rosado, allegedly "assault[ed] and batter[ed]" Plaintiff again while Plaintiff remained restrained.  *Id.* ¶¶ 32–33.

Det. Correa, Det. Rosado, Deputy U.S. Marshal Kamrowski, and Deputy U.S. Marshal Kushi (the "Moving Defendants") have moved to dismiss the Third Amended Complaint.[4]  In their initial briefing on the motions, the Moving Defendants largely argued that Plaintiff failed to state a claim upon which relief can be granted because Plaintiff has no *Bivens* remedy as a matter of law and because any *Bivens* claim would be time-barred.[5]  Joint Mem. at 4–18; Correa Mem. at 3–11.

In his opposition briefing, Plaintiff argued, *inter alia*, that, even if no *Bivens* remedy were available, the Moving Defendants are liable under 42 U.S.C. § 1983 ("§ 1983") because, despite

---

[4] Det. Correa filed one motion to dismiss (Dkt. No. 63), and Det. Rosado, Deputy U.S. Marshal Kamrowski, and Deputy U.S. Marshal Kushi separately filed a joint motion to dismiss (Dkt. No. 62).

[5] Det. Correa was the only Moving Defendant to specifically note in his briefing papers that, to the extent Plaintiff alleges a claim under 42 U.S.C. § 1983, the claim should be dismissed because the claim is not properly brought against federal employees, and Det. Correa's participation in Plaintiff's arrest was in his capacity as a federal task force agent (both as alleged in the TAC and as uncontested by Det. Correa). Def. Correa's Mem. Supp. Mot. Dismiss, Dkt. No. 64, at 2 n.2 ("Correa Mem.").

their status as either Deputy U.S. Marshals or deputized members of a federal task force, they acted under the color of state law.  Pl.'s Mem. Opp. Mots. Dismiss by Defs. Correa, Kamrowski, Kushi, and Rosado, Dkt. No. 68, at 4–10 ("Opp.").  The Moving Defendants' reply briefs then addressed the Plaintiff's arguments that they could be liable under § 1983 despite their status as federal law enforcement agents.  Def. Correa's Reply Mem., Dkt. No. 70, at 2–8 ("Correa Reply"); Defs. Kamrowski, Kushi, and Rosado's Reply Mem., Dkt. No. 72, at 2–6 ("Joint Reply").  The Court issued an Order explaining that it was inclined to consider the Moving Defendants' arguments regarding dismissal of Plaintiff's § 1983 claims and invited Plaintiff to file a sur-reply further addressing the Moving Defendants' arguments.  Dkt. No. 73.  Plaintiff subsequently filed a sur-reply.  Dkt. No. 74.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Bell Atl. Corp.*, 550 U.S. at 558.

When ruling on a motion to dismiss, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

# DISCUSSION

## I. The *Bivens* Claims Must Be Dismissed

The Court begins where all parties appear to agree: Plaintiff has failed to state a claim under *Bivens*.[6]

In his opposition briefing, Plaintiff acknowledges that his *Bivens* claims as against the Moving Defendants are "likely preclude[d]" under a recent Second Circuit decision. Opp. at 10.

In *Bivens*, the Supreme Court held that "even absent statutory authorization, it would enforce [an implied] damages remedy [under the Constitution] to compensate persons injured by federal officers who violated the [Fourth Amendment's] prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017). In the decades following *Bivens*, the Supreme Court has strictly cabined *Bivens*' reach. "[E]xpanding the *Bivens* remedy is now a disfavored judicial activity," *id.* at 135 (internal references omitted), and "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 596 U.S. 482, 486 (2022).

When a court is asked to infer a *Bivens* remedy, it must first determine whether the case presents a context that is "different in a meaningful way" from the three cases in which the Supreme Court has implied a damages action under the Constitution. *See Ziglar*, 582 U.S. at 139. Those three cases involved claims against: "[federal narcotics] agents for handcuffing a man in his own home without a warrant;" "a Congressman for firing his female secretary;" and

---

[6] In his brief opposing the motions to dismiss, Plaintiff effectively concedes that *Lewis v. Bartosh*, No. 22-3060-pr, 2023 WL 8613873 (2d Cir. Dec. 13, 2023), bars his *Bivens* claim here, but wrote, "While a *Bivens* remedy may now be foreclosed by *Lewis*, it was not at the time of filing, and Plaintiff reserves his right to challenge the Circuit's holding as wrongly decided based on [district court] precedent permitting excessive force cases under *Bivens*, as well as allowing actions against federal law enforcement, including U.S. Marshals." Opp. at 10–11. The Court assumes that Plaintiff is asserting his right to raise this issue in the Court of Appeals at the appropriate time (and properly preserving his ability to do so), rather than before this Court, which is bound to apply the controlling law set forth in *Egbert* and *Bartosh*.

"prison officials for failure to treat an inmate's asthma." *Id.* at 140 (citing *Bivens*; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)).

While some differences are so trivial that they will not create a new *Bivens* context, the Supreme Court has made it clear that "even a modest extension is still an extension." *Ziglar*, 582 U.S. at 147, 149; *see also Egbert*, 596 U.S. at 491 ("When asked to imply a *Bivens* action, our watchword is caution.") (internal references omitted). A context may be "new" even though the right at issue and the mechanism of injury are the same. *Ziglar*, 582 U.S. at 139. For instance, a context may be different than the three cases in which the Supreme Court implied a constitutional damages action because of the rank of the officer involved or the federal agency employing the defendant. *See id.* at 135, 139–40; *see also Egbert*, 596 U.S. at 494–98 (foreclosing an implied Fourth Amendment damages action against a Customs and Border Patrol officer who had allegedly used excessive force against the plaintiff).

Where a case presents a new *Bivens* context, a *Bivens* remedy is not available if "special factors indicat[e] that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (internal references omitted). Moreover, a *Bivens* remedy is unavailable "if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure," even if existing or alternative remedies do not provide complete relief. *Id.* at 493 (internal references omitted).

The Second Circuit recently affirmed a district court's ruling that a *Bivens* remedy was not available in a post-*Egbert* case quite similar to this case. In *Lewis v. Westfield*, which involved claims against various Deputy U.S. Marshals and others, including for the use of excessive force against the plaintiff in his home, a district judge in the Eastern District of New

York concluded that under *Egbert*, a *Bivens* remedy was not available because the case presented a new category of defendants from the three cases in which the Supreme Court previously approved a *Bivens* remedy. 640 F. Supp. 3d 249, 253–54 (E.D.N.Y. 2022), *aff'd sub nom. Lewis v. Bartosh*, No. 22-3060-pr, 2023 WL 8613873 (2d Cir. Dec. 13, 2023). The district court also observed that a *Bivens* remedy was precluded in light of the alternative remedial schemes created by federal statutes. *Westfield*, 640 F. Supp. 3d at 254–55. The Second Circuit affirmed, stating: "The district court concluded that several of the factors recognized in *Egbert* precluded a *Bivens* remedy here, including the professional identity of [d]efendants-[a]ppellees (Deputy Marshals, rather than federal narcotics agents) and the existence of an alternative remedial scheme through which the Directors of the Marshals Service must investigate reported misconduct." *Bartosh*, 2023 WL 8613873, at *2;[7] *see also Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024) (affirming, in a summary order, the district court's denial of a *Bivens* remedy where the defendants were a former President, former Attorney General, and multiple officers and agents of the Bureau of Prisons and Pre-trial Services); *Edwards v. Gizzi*, 107 F.4th 81 (2d Cir. 2024) (affirming district court's denial of *Bivens* remedy in excessive force case against Deputy U.S. Marshals and others, albeit in two concurrences with different reasoning).

Similarly to *Westfield*, this case involves meaningful differences from the three cases in which the Supreme Court previously approved a *Bivens* remedy. Among the differences—which need not be detailed exhaustively here—Defendants were Deputy U.S. Marshals and deputized members of a U.S. Marshals Service ("USMS") Fugitive Task Force, thus presenting a new category of defendants. *See id.* Moreover, Defendants were acting pursuant to a different legal

---

[7] The Circuit's affirmance rested solely on the district court's "new category of defendants" finding, as the plaintiff did not challenge the district court's "alternative remedies" finding on appeal. However, the "alternative remedies" finding is well-supported in the governing caselaw. *See, e.g., Egbert*, 596 U.S. at 493; *Ziglar*, 582 U.S. at 137.

7

authority than the three Supreme Court cases; they were carrying out an arrest warrant at a third party's residence pursuant to the USMS's federal statutory authority, rather than, as in *Bivens*, carrying out an arrest without a warrant in the plaintiff-arrestee's own home.  *See Westfield*, 640 F. Supp. 3d at 254.

      Because this case provides a new context for the application of *Bivens*, the operative question becomes whether special factors counsel hesitation in extending *Bivens*.  As in *Westfield*, an implied constitutional damages remedy is precluded here because of the existence of an alternative remedial scheme.  In addition to the availability of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80; *see also Edwards v. Gizzi*, No. 20-cv-07371 (KMK), 2022 WL 309393, at *8–9 (S.D.N.Y. Feb. 2, 2022), *aff'd* 107 F.4th 81 (2d Cir. 2024), there is direct recourse within the Marshal Service: "by regulation, the Director [of USMS] 'shall' investigate 'alleged improper conduct on the part of U.S. Marshal Service personnel.'  Anyone aggrieved by a Deputy Marshal's conduct may file a grievance alleging improper conduct."  *Westfield*, 640 F. Supp. 3d at 254 (citing 28 C.F.R. § 0.111(n)).  Moreover, the Attorney General must "ensure that 'any component' of the Department that receives a 'nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General.'"  *Id.* (citing 5 U.S.C. App. § 8E(d) (current version at 5 U.S.C. § 413(d)).  In turn, the Inspector General is authorized to "'investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice,' 'refer such allegations to the Office of Professional Responsibility,' or refer them to 'the internal affairs office of the appropriate component' of the Department, including the USMS."  *Id.* (citing 5 U.S.C. App. § 8E(b)(2) (current version at 5 U.S.C. § 413(b)(2)).  Public channels are available to make complaints under both remedies.  *See id.*

Accordingly, no *Bivens* remedy is available in this case and the Moving Defendants' motions to dismiss the *Bivens* claims are granted.

## II.      The Claims Under 42 U.S.C. § 1983 Must Be Dismissed

In addition to his *Bivens* claims, Plaintiff alleges that Defendants are liable under § 1983 for their use of excessive force. *See* TAC ¶ 40.

### A.      The Section 1983 Arguments Are Not Waived

As a preliminary matter, Plaintiff appears to argue in his opposition brief to the motions to dismiss that the Moving Defendants did not brief or address the availability of claims under § 1983 in their opening briefs and thus have waived arguments regarding those claims. Opp. at 9–10.

In his opening brief, Det. Correa noted in a footnote that to the extent Plaintiff was alleging a § 1983 claim, the claim should be dismissed because such actions are not properly brought against federal employees. Correa Mem. at 2 n.2 (citing cases). Det. Rosado, Deputy U.S. Marshal Kamrowski, and Deputy U.S. Marshal Kushi did not directly address the § 1983 claim in their opening brief. *See* Joint Mem. However, in his opposition brief, Plaintiff argued at length that the case against the Moving Defendants should not be dismissed because even if there was no legal remedy under *Bivens*, they could be held liable under § 1983. *See* Opp. at 4–10. In their reply briefs, all of the Moving Defendants responded fully to the § 1983 claims. *See* Correa Reply at 2–8; Joint Reply at 2–6.

District courts need not consider arguments or requests for relief raised for the first time in reply briefs. *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017). Arguments newly raised in reply briefs generally are not considered because the opposing party may not have an adequate opportunity to respond. *Id.* However, the Second Circuit has made

clear that district courts have discretion to consider a belatedly raised argument, and a judge's decision to countenance such an argument is reviewed only for abuse of discretion. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).

Here, as explained, Det. Correa raised the § 1983 claim in his opening brief, arguing that such a claim (if made) is not properly brought against federal employees and that, because Det. Correa (an NYPD detective) was acting in the capacity of a federal task force agent, Plaintiff's claims must be analyzed under *Bivens*. Correa Mem. at 2 n.2. While the other Moving Defendants did not raise arguments about this issue until filing their joint reply brief, for reasons of judicial efficiency and fairness, this Court will consider their arguments as to dismissal of the § 1983 claims.

Where one defendant, Det. Correa, raised arguments regarding the inapplicability of the claims in his opening brief and Plaintiff had the opportunity to respond (and did, in fact, address the argument in detail), Plaintiff cannot claim that he was "blindsided" by the Moving Defendants' arguments as to Plaintiff's failure to state a claim under § 1983. *See Ruggiero*, 424 F.3d at 252; *see also Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000); *Kingstown Cap. Mgmt., L.P. v. Vitek*, No. 20-3406, 2022 WL 3970920, at *1 (2d Cir. 2022) (with respect to a motion to dismiss, plaintiffs were not prejudiced or taken by surprise when the district court considered foreign-law expert's affidavit attached to defendants' reply briefs because plaintiffs had filed a similar affidavit with their opposition papers).

Moreover, Plaintiff was explicitly given notice that this Court was inclined to consider the Moving Defendants' arguments regarding the § 1983 claims, and Plaintiff was given leave to file a sur-reply addressing that issue. Dkt. No. 73. Plaintiff then filed a sur-reply and thus had a full opportunity to be heard on the issue and to respond to any additional arguments made in the

Moving Defendants' reply briefs.  Pl.'s Sur-Reply Mem., Dkt. No. 74 ("Sur-Reply").  *See Ruggiero*, 424 F.3d at 252 ("[I]t is hard for [the plaintiff] to claim unfair prejudice now, because she could have claimed surprise in the district court and sought to file a responsive sur-reply."); *A. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (district courts have discretion to consider arguments first raised in reply briefs, which discretion can be exercised by either ignoring the new arguments or granting permission for a sur-reply).  As such, Plaintiff is not prejudiced by this Court's consideration of the Moving Defendants' arguments regarding the § 1983 claims, and considering all claims together is in the interests of judicial efficiency.

        **B.**      **Plaintiff Fails to State a Claim Under § 1983 Against the Moving Defendants**

The Supreme Court has explained that "[t]he purpose of § 1983 is to deter *state actors* from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (emphasis added).  In order to prevail on a claim under § 1983, a plaintiff must show the deprivation of any rights, privileges, or immunities secured by the Constitution and laws *by a person acting under the color of state law*.  *Bryant v. Steele*, 25 F. Supp. 3d 233, 246 (E.D.N.Y. 2014).

Here, citing, *inter alia*, to *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214 (E.D.N.Y. 2010) and *Kletschka v. Driver*, 411 F.2d 436 (2d Cir. 1969), Plaintiff argues that the Moving Defendants were acting under the color of state law because (1) the State of New York issued the arrest warrant for Plaintiff and thus the state "compelled" the conduct at issue; (2) the Moving Defendants acted in concert with the state by acting jointly with the NYPD; and (3) the Moving

Defendants were policing and enforcing state laws, which are functions traditionally performed by the state. *See* Opp. at 6–10.

In order for conduct causing deprivation of a federal right to be attributable to the state: (1) the alleged deprivation must be "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible;" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). As to the second requirement, a party may fairly be said to be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.*; *see also Baez v. JetBlue Airways*, 745 F. Supp. 2d at 221.

Generally, a state employee acts under color of state law while acting in his or her official capacity or while exercising his or her responsibilities pursuant to state law. *See West v. Atkins*, 487 U.S. 42, 50 (1988). Federal actors can potentially be held liable under § 1983 under extremely limited circumstances where their conduct "is the joint product of the exercise of a State power and of a non-State power" and where "the state or its officials played a significant role in the result." *Kletschka*, 411 F.2d at 449 (internal references omitted). Cooperation between state and federal bureaucracies is insufficient; federal actors must have "acted with an improper motive" rather than just in a "spirit of cooperation" with the state defendants. *See Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 154–55 (2d Cir. 2006). Moreover, federal officers who "conspire[] with a state officer may act under color of state law, but since federal officials typically act under color of *federal* law, they are rarely deemed to have acted

under the color of state law." *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) (internal references omitted) (emphasis in original).

Here, the absence of action "under the color of state law," as opposed to federal law, is fatal to Plaintiff's claims under § 1983 as to the Moving Defendants, all of whom were either Deputy U.S. Marshals or deputized members of the federal Marshals Fugitive Task Force. Courts in this Circuit have consistently held that federal task forces act pursuant to federal, not state, law; as such, members of the federal task force act pursuant to *federal* law and a *federal* grant of authority. *See Guerrero v. Scarazzini*, 274 F. App'x 11, 11 n.1 (2d Cir. 2008); *Ochoa v. Bratton*, No. 16-cv-2852 (JGK), 2017 WL 5900552, at *6 (S.D.N.Y. Nov. 28, 2017); *Aikman v. Cnty. of Westchester*, 691 F. Supp. 2d 496, 498–99 (S.D.N.Y. 2010). This is true even when the task force is acting to investigate or enforce state crimes. *See Pou v. U.S. Drug Enforcement Admin.*, 923 F. Supp. 573, 576, 579 (S.D.N.Y. 1996). Additionally, state officers who have been deputized by a federal task force and are acting in their capacity as federal officers on the task force are equally acting under the color of federal, not state, law for the purposes of the activities carried out by the task force. *See, e.g.*, *id.* at 579; *Morales v. City of New York*, No. 11-cv-05407 (PAC), 2012 WL 13388990, at *3 (S.D.N.Y. Dec. 5, 2012); *see also Boudette v. Sanders*, No. 18-cv-02420 (CMA) (MEH), 2019 WL 3935168, at *17 (D. Colo. Aug. 19, 2019).[8]

---

[8] Plaintiff points to *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 399 (1979), for the proposition that "federal authorizing legislation does not preclude § 1983 liability against persons or entities who engage in state action." Sur-Reply at 1. In *Lake Country Ests., Inc.*, the Supreme Court found that conduct undertaken under an interstate Compact occurred under the color of state law, in part because the "Compact had its genesis in the actions of the compacting States" and the states implemented the agency contemplated by the Compact, notwithstanding that congressional consent to the Compact was required. 440 U.S. at 399. Here, in contrast, as explained *infra*, the Fugitive Task Force had its "genesis" entirely in federal action. Likewise, Plaintiff's references in his sur-reply to cases from other circuits involving dissimilar factual circumstances are inapposite. Sur-Reply at 2–4.

Specifically as to USMS Fugitive Task Forces, every court to have considered the issue has held that these Task Forces and their members (including deputized local or state law enforcement) are acting pursuant to federal law and federal authority, and Plaintiff cites to no authority holding otherwise. As a general background, the USMS is authorized to deputize "federal, state, or local law enforcement officers whenever the law enforcement needs of the U.S. Marshals Service so require." 28 C.F.R. § 0.112(b). The USMS is further expressly authorized to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B). Indeed, in the Presidential Threat Protection Act of 2000, 34 U.S.C. § 41503(a), Congress specifically directed the Attorney General to establish "permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities . . . to be directed and coordinated by the United State Marshals Service, for the purpose of locating and apprehending fugitives." *See generally James v. City of Rochester*, 673 F. Supp. 3d 279, 285 (W.D.N.Y. 2023). As such, these task forces plainly derive their authority from federal, not state, law.

The fact that the USMS Task Force at issue in this case was executing a state warrant does not alter the analysis, nor does the presence of deputized state law enforcement officers on the task force change the federal nature of the conduct. *See, e.g., James*, 673 F. Supp. 3d at 287; *Martinez v. D'Agata*, No. 16-cv-00044 (VB), 2019 WL 6895436, at *5 n.5 (S.D.N.Y. Dec. 18, 2019) (members of the USMS's New York/New Jersey Regional Fugitive Task Force were acting under federal law, even where the warrant was issued by New York state in connection with violations of state law, and where the relevant task force members included deputized state law enforcement officers); *Hester-Bey v. Donaruma*, No. 14-cv-03903 (CBA) (LB), 2017 WL 1148613, at *3 n.1 (E.D.N.Y. Mar. 24, 2017) (plaintiff failed to state a claim under § 1983

because defendants, who had acted pursuant to a bench warrant issued by a state court, were U.S. Marshals or local law enforcement agents deputized as Special Deputy Marshals and were thus not acting under color of state law).

Here, the Moving Defendants were "[a]t all times relevant [to the Third Amended Complaint] . . . deputized by the United States Marshals Service Fugitive Task Force," *see* TAC ¶¶ 6, 9, or were "[a]t all times relevant [to the Third Amended Complaint] . . . United States Marshal[s] employed by the United States Marshals Service," *see id.* ¶¶ 12, 13, and thus were acting under the color of federal law. Plaintiff does not otherwise allege an illegal conspiracy between state and federal actors; he only alleges that the federal task force included certain state employees and was acting as a result of the violation of state law. But this is plainly insufficient. *See Boudette*, 2019 WL 3935168, at *17; *see also Beechwood Restorative Care Center*, 436 F.3d at 154–55.

Plaintiff argues that the framework here, well-established in the courts of the Second Circuit, would allow state law enforcement officers to "eschew liability under § 1983 based on their status as a federal officer." Opp. at 8. To the extent that Plaintiff's concern is specifically about liability under § 1983, he is correct—except under extremely limited circumstances not present here, persons who are federal officers under the law, including state law enforcement officers acting as deputized federal task force members, cannot be sued under § 1983. However, as discussed above, that does not mean no remedy exists at all for allegations of wrongdoing against federal officers, or those acting in their capacity as federal officers. *See, e.g. Westfield*, 640 F. Supp. 3d at 254 (discussing USMS internal grievance process and citing 28 C.F.R. § 0.111(n)); *Sosa v. Bustos*, No. 17-cv-00417 (ER), 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020) (discussing Federal Tort Claims Act); *Aikman*, 691 F. Supp. 2d at 498 (citing 5 U.S.C. §

3374(c) and 21 U.S.C. § 878(b) for principle that state and local law enforcement officers designated as federal task force members are treated as federal employees for the purposes of any federal tort liability statutes).

Accordingly, the motions to dismiss Plaintiff's claims under § 1983 as against the Moving Defendants are also granted.

## CONCLUSION

Because Plaintiff has failed to state a claim upon which relief can be granted against the Moving Defendants, the Court need not reach the issue of whether Plaintiff's claims against the Moving Defendants are time-barred. For the foregoing reasons, the Moving Defendants' motions to dismiss are GRANTED. The Clerk of Court is directed to terminate Dkt. Nos. 61 and 63.

Dated: September 4, 2024
       New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge